Jonathan H. Siegel (SBN 78143)
Latika Malkani (SBN 184301)
Laura Herron Weber (SBN 226934)
SIEGEL LEWITTER MALKANI
1939 Harrison Street, Suite 307
Oakland, California 94612
Tel:  (510) 452-5000
Fax:  (510) 452-5004
jsiegel@sl-employmentlaw.com
lmalkani@sl-employmentlaw.com
lweber@sl-employmentlaw.com

*Attorneys for Plaintiff National Union of Healthcare Workers*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND**

| | |
|---|---|
| NATIONAL UNION OF HEALTHCARE WORKERS, <br><br> Plaintiff, <br><br> v. <br><br> CHILDREN'S HOSPITAL & RESEARCH CENTER AT OAKLAND, a California nonprofit public benefit corporation, <br><br> Defendant. | ) Case No. <br> ) <br> ) **NATIONAL UNION OF HEALTHCARE** <br> ) **WORKERS' COMPLAINT TO COMPEL** <br> ) **ARBITRATION** <br> ) <br> ) (9 U.S.C. § 4; 29 U.S.C. § 185) <br> ) <br> ) <br> ) <br> ) <br> ) |

### I. INTRODUCTION

1.      Plaintiff, the National Union of Healthcare Workers (NUHW or the Union or Petitioner), a labor organization, brings this action pursuant to Section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4, and pursuant to Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. section 185, to compel Defendant, Children's Hospital & Research Center at Oakland dba University of California San Francisco (UCSF) Benioff Children's Hospital & Research Center at Oakland (BCH Oakland or the Employer or Respondent), to arbitrate the controversies alleged herein as required by the parties' collective bargaining agreements.  Despite repeated requests, Defendant refuses to proceed with arbitration.



Plaintiff, therefore, requests the Court issue an order compelling Defendant to arbitrate these matters.

2.      In support of this Complaint, Plaintiff alleges as follows:

## II. JURISDICTION AND VENUE

3.      A federal district court has original jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States."  28 U.S.C. § 1331.  This action to compel arbitration pursuant to the grievance and arbitration provisions of binding collective bargaining agreements arises under, and this Court has subject matter jurisdiction pursuant to, Section 4 of the Federal Arbitration Act and Section 301(a) of the Labor Management Relations Act.  *See* 9 U.S.C. § 4; 29 U.S.C. § 185(a).

4.      Venue is appropriate in the Northern District of California pursuant to Section 301(c) of the LMRA, as Plaintiff's duly authorized officers and agents are engaged in representing and acting on behalf of members and bargaining unit employees in the City of Oakland, in the County of Alameda, and pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

5.      Because the acts giving rise to this lawsuit arose primarily in Alameda and/or Contra Costa Counties, it should be assigned to the San Francisco/Oakland division.

## III. THE PARTIES

6.      Plaintiff/Petitioner the National Union of Healthcare Workers is a labor organization representing employees in the healthcare industry affecting commerce within the meaning of 29 U.S.C. section 185.  Plaintiff represents over 19,000 healthcare employees working throughout the states of California and Hawai'i.  Since 2012, NUHW has represented employees employed by BCH Oakland, previously identified as Children's Hospital and Research Center at Oakland.  Presently, NUHW represents approximately 1,332 employees, in three separate bargaining units, at BCH Oakland.  At all relevant times, Plaintiff has and does maintain a principal place of business, its Northern California Office, situated at 1250 45th Street, Suite 200 Emeryville, CA 94608, located in Alameda County.

7.      Defendant Children's Hospital & Research Center at Oakland dba University of



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

California San Francisco (UCSF) Benioff Children's Hospital & Research Center at Oakland is an employer engaged in the hospital and healthcare industries affecting commerce, and is a California nonprofit corporation, authorized to conduct business and regularly conducting business in the State of California. Defendant operates a primary hospital, the UCSF Benioff Children's Hospital, situated at 747 52nd Street in Oakland, California, and operates the Oakland Outpatient Center, located at 744 52nd Street, in Oakland, California, as well as additional healthcare facilities located in Oakland and Walnut Creek, California. Defendant BCH Oakland is an employer within the meaning of Section 2(2) of the National Labor Relations Act and within the meaning of Section 301(a) of the LMRA. *See* 29 U.S.C. § 152(2) and 29 U.S.C. § 185(a).

## IV. FACTUAL BACKGROUND

8.      As Plaintiff demonstrates below, NUHW and BCH Oakland are parties to valid arbitration agreements contained within collective bargaining agreements (CBA). The parties had and continue to have specific disputes over the application of and/or interpretation of several provisions contained in their CBAs. While the CBAs were in effect, NUHW submitted to BCH Oakland timely and valid grievances concerning the disputes. After those grievances were properly advanced to arbitration, Defendant has consistently refused and failed to arbitrate the grievances. Defendant's refusal to arbitrate the grievance is without justification and is not rooted in a good faith non-frivolous basis for refusing to arbitrate.

> **A.      NUHW and BCH Oakland Are Parties to Valid Arbitration Agreements Contained Within Their Collective Bargaining Agreements**

9.      At all relevant times, Plaintiff NUHW and Defendant BCH Oakland have been and are signatories to, and bound by, three separate collective bargaining agreements, one for each of three separate bargaining units. Each of those agreements set forth the terms and conditions of employment for the performance of work by employees employed by BCH Oakland. Each of those agreements also contains a valid and binding mandatory arbitration clause that applies to the instant dispute.

//

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

3
NUHW'S COMPLAINT TO COMPEL ARBITRATION

1.    **Service & Technical Workers CBA and Valid Arbitration Agreement:**

10.    On March 18, 2016, in Case No. 32-RC-114542, and on June 9, 2016, in Case No. 32-RC-175744, NUHW was certified by the National Labor Relations Board (NLRB) as the exclusive bargaining agent for employees in the Service and Technical Workers (S&T) bargaining unit.  A prior NLRB certification in this unit issued on May 24, 2012, in Case No. 32-RC-005617.  Plaintiff NUHW and Defendant BCH Oakland are signatories to, and bound by, a written Collective Bargaining Agreement (CBA) that set forth the terms and conditions of employment for the performance of work by employees in the S&T bargaining unit.  The S&T CBA has been in effect at all times relevant to this Complaint in that the CBA's effective dates are May 1, 2022, through April 30, 2025.  A true and correct copy of this S&T CBA is attached to this Complaint as **Exhibit A** (S&T CBA with effective dates of May 1, 2022, through April 30, 2025).

11.    Under this CBA, Respondent explicitly recognizes NUHW as the exclusive bargaining agent for approximately 671 employees in the S&T unit.  *See* **Exhibit A**, S&T CBA at p. 1, Section 1.1, Recognition: Bargaining Unit.

12.    The terms of this S&T CBA, as applicable to this Complaint were, and continue to be, performed by the parties in Alameda and/or Contra Costa County.

13.    Section 31 of the S&T CBA sets forth the Grievance Procedure and Arbitration, in relevant part, as follows:

> **SECTION 31 – GRIEVANCE PROCEDURE AND ARBITRATION**
>
> 31.1    Any problem arising in connection with the application or interpretation of the provisions of this Agreement, including the problems of discharge or suspension, which cannot be amicably adjusted between an employee of the Hospital and the Department Head, or such other person as the Hospital may designate, shall be reduced to writing, signed by the employee or Union representative, whichever is appropriate, and submitted to a Hospital representative designated by the Hospital. No grievance shall be considered unless it has been first presented in writing within thirty (30) days of the alleged occurrence giving rise to the grievance. In the event the grievance concerns the discharge or suspension of an

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

employee, the grievance must be presented in writing within ten (10) working days following discharge or suspension.

31.2     STEP ONE - GRIEVANCE CONFERENCE

Within seven (7) days of receipt of the written grievance by the Hospital, the Union, the employee, and the Hospital Administrator or designated representative shall meet and attempt to resolve the matter informally. If the efforts to resolve the grievance in this matter are unsuccessful, either party may request that the matter be referred to an Adjustment Board. The request for an Adjustment Board must be made to the other party within fifteen (15) days of the receipt by the Hospital of the written grievance.

31.3     STEP TWO - ADJUSTMENT BOARD

Upon receipt of a timely, written request, there shall be an Adjustment Board established consisting of two (2) Union Field Representatives designated by the Union and two (2) representatives designated by the Hospital. The Adjustment Board shall meet within ten (10) days of receipt of the request for its establishment and shall consider fully all aspects of the issues presented. Any decision by a majority of the four members of the Board of Adjustment shall be final and binding upon all parties, subject to limitations on jurisdiction and authority contained in 31.3(c) below. If, during the period that the Adjustment Board can meet, no majority decision is reached, either party may request in writing that the matter be referred to Step Three, provided that if such request is made, it must be made within ten (10) days of a deadlock at the Adjustment Board, or within ten (10) days following the period during which the Adjustment Board can meet whichever occurs first, or proceeding to arbitration shall be waived.

a.  Arbitration

The following procedure shall apply if a grievance is timely submitted in writing to arbitration:

An impartial arbitrator shall be selected by mutual agreement from the following panel of arbitrators:

| | |
|---|---|
| Fred Horowitz | Jerilou Cossack |
| Matthew Goldberg | Andria Knapp |
| Barry Winograd | Mark Burstein |
| David Weinberg | |

If the parties cannot reach agreement, the parties will select an arbitrator by alternately striking names from the list until one arbitrator remains. The selection of the arbitrator must be completed no later than thirty (30)



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW

1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

calendar days from receipt by the Facility of the appeal to arbitration.

b. A hearing on the grievance shall be held at a time and place designated by the arbitrator, at which the Facility and the Union shall present their respective positions, evidence and arguments. The sole parties to the arbitration shall be the Facility and the Union. The arbitrator's decision shall be rendered in writing and shall be final and binding on the parties and on all affected bargaining unit employees. It shall be issued not more than thirty (30) calendar days after the close of the hearing or the filing of the briefs, whichever is later.

c. The arbitrator's authority is derived from this Agreement and his/her jurisdiction is limited to the interpretation and application thereof. He/She shall not have authority to:

  i. amend or modify any provision of this Agreement; or

  ii. render an award on any grievance arising before the effective date or after the termination date.

d. The fee and expenses of the arbitrator, the court reporter's appearance fee, and the cost of mutual facilities shall be borne equally by the Facility and the Union.

## 2. Business Office Clerical CBA and Valid Arbitration Agreement:

14. On August 11, 2016, NUHW was certified by the National Labor Relations Board (NLRB) in Case No. 32-RC-1179709 as the exclusive bargaining agent for employees in the Business Office and Clerical Workers (BOC) bargaining unit. Plaintiff NUHW and Defendant BCH Oakland are signatories to, and bound by, a written Collective Bargaining Agreement (CBA) that set forth the terms and conditions of employment for the performance of work by employees in the BOC bargaining unit. The BOC CBA has been in effect at all times relevant to this Complaint in that the CBA's effective dates are May 1, 2022, through April 30, 2025. A true and correct copy of this BOC CBA is attached to this Complaint as **Exhibit B** (BOC CBA with effective dates of May 1, 2022, through April 30, 2025).

15. Under this CBA, Respondent explicitly recognizes NUHW as the exclusive bargaining agent for approximately 336 employees in the BOC unit. *See* **Exhibit B**, BOC CBA at p. 1, Section 1.1, Recognition: Bargaining Unit.

16. The terms of this BOC CBA, as applicable to this Complaint were, and continue to

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

be, performed by the parties in Alameda and/or Contra Costa County.

17.     Section 31 of the BOC CBA sets forth the Grievance Procedure and Arbitration, in relevant part, as follows:

### SECTION 31 – GRIEVANCE PROCEDURE AND ARBITRATION

31.1    Any problem arising in connection with the application or interpretation of the provisions of this Agreement, including the problems of discharge or suspension, which cannot be amicably adjusted between an employee of the Hospital and the Department Head, or such other person as the Hospital may designate, shall be reduced to writing, signed by the employee or Union representative, whichever is appropriate, and submitted to a Hospital representative designated by the Hospital. No grievance shall be considered unless it has been first presented in writing within thirty (30) days of the alleged occurrence giving rise to the grievance. In the event the grievance concerns the discharge or suspension of an employee, the grievance must be presented in writing within ten (10) working days following discharge or suspension.

31.2    <u>STEP ONE - GRIEVANCE CONFERENCE</u>

Within seven (7) days of receipt of the written grievance by the Hospital, the Union, the employee, and the Hospital Administrator or designated representative shall meet and attempt to resolve the matter informally. If the efforts to resolve the grievance in this matter are unsuccessful, either party may request that the matter be referred to an Adjustment Board. The request for an Adjustment Board must be made to the other party within fifteen (15) days of the receipt by the Hospital of the written grievance.

31.3    <u>STEP TWO - ADJUSTMENT BOARD</u>

Upon receipt of a timely, written request, there shall be an Adjustment Board established consisting of two (2) Union Field Representatives designated by the Union and two (2) representatives designated by the Hospital. The Adjustment Board shall meet within ten (10) days of receipt of the request for its establishment and shall consider fully all aspects of the issues presented. Any decision by a majority of the four members of the Board of Adjustment shall be final and binding upon all parties, subject to limitations on jurisdiction and authority contained in 31.3(c) below. If, during the period that the Adjustment Board can meet, no majority decision is reached, either party may request in writing that the matter be referred to Step Three, provided that if such request is made, it must be made within ten (10) days of a deadlock at the


SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

Adjustment Board, or within ten (10) days following the period during which the Adjustment Board can meet whichever occurs first, or proceeding to arbitration shall be waived.

a.  Arbitration

The following procedure shall apply if a grievance is timely submitted in writing to arbitration:

An impartial arbitrator shall be selected by mutual agreement from the following panel of arbitrators:

| Fred Horowitz | Jerilou Cossack |
| Matthew Goldberg | Andria Knapp |
| Barry Winograd | Mark Burstein |
| David Weinberg | |

If the parties cannot reach agreement, the parties will select an arbitrator by alternately striking names from the list until one arbitrator remains. The selection of the arbitrator must be completed no later than thirty (30) calendar days from receipt by the Facility of the appeal to arbitration.

b.  A hearing on the grievance shall be held at a time and place designated by the arbitrator, at which the Facility and the Union shall present their respective positions, evidence and arguments. The sole parties to the arbitration shall be the Facility and the Union. The arbitrator's decision shall be rendered in writing and shall be final and binding on the parties and on all affected bargaining unit employees. It shall be issued not more than thirty (30) calendar days after the close of the hearing or the filing of the briefs, whichever is later.

c.  The arbitrator's authority is derived from this Agreement and his/her jurisdiction is limited to the interpretation and application thereof. He/She shall not have authority to (a) amend or modify any provision of this Agreement; or (b) render an award on any grievance arising before the effective date or after the termination date.

d.  The fee and expenses of the arbitrator, the court reporter's appearance fee, and the cost of mutual facilities shall be borne equally by the Facility and the Union.

**3.    Professional Unit CBA and Valid Arbitration Agreement:**

18.    On February 3, 2017, NUHW was certified by the National Labor Relations Board (NLRB) in Case No. 32-RC-190377 as the exclusive bargaining agent for employees in the Professional Employees (Professional or Pros) bargaining unit. Plaintiff NUHW and Defendant



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

BCH Oakland are signatories to, and bound by, a written Collective Bargaining Agreement that set forth the terms and conditions of employment for the performance of work by employees in the Professional bargaining unit.  The Pros CBA has been in effect at all times relevant to this Complaint in that the CBA's effective dates are September 1, 2022, through August 31, 2025.  A true and correct copy of this Pros CBA is attached to this Complaint as **Exhibit C** (Pros CBA with effective dates of September 1, 2022, through August 31, 2025).

19.    Under this CBA, Respondent explicitly recognizes NUHW as the exclusive bargaining agent for approximately 325 employees in the Professional unit.  *See* **Exhibit C**, Pros CBA at p. 1, Section 1.1, Recognition: Bargaining Unit.

20.    The terms of this Pros CBA, as applicable to this Complaint were, and continue to be, performed by the parties in Alameda and/or Contra Costa County.

21.    Section 33 of the Pros CBA sets forth the Grievance Procedure and Arbitration, in relevant part, as follows:

**SECTION 33 – GRIEVANCE PROCEDURE AND ARBITRATION**

33.1    Any problem arising in connection with the application or interpretation of the provisions of this Agreement, including the problems of discharge or suspension, which cannot be amicably adjusted between an employee of the Hospital and the Department Head, or such other person as the Hospital may designate, shall be reduced to writing, signed by the employee or Union representative, whichever is appropriate, and submitted to a Hospital representative designated by the Hospital. No grievance shall be considered unless it has been first presented in writing within thirty (30) days of the alleged occurrence giving rise to the grievance. In the event the grievance concerns the discharge or suspension of an employee, the grievance must be presented in writing within ten (10) working days following discharge or suspension.

33.2    STEP ONE - GRIEVANCE CONFERENCE

Within seven (7) days of receipt of the written grievance by the Hospital, the Union, the employee, and the Hospital Administrator or designated representative shall meet and attempt to resolve the grievance informally. If the efforts to resolve the grievance in this matter are unsuccessful, either party may request that the matter be referred to an Adjustment Board. The request for an Adjustment Board must be made to

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

the other party within fifteen (15) days of the receipt by the Hospital of the written grievance.

33.3 **STEP TWO - ADJUSTMENT BOARD**

Upon receipt of a timely, written request, there shall be an Adjustment Board established consisting of two (2) Union Field Representatives designated by the Union and two (2) representatives designated by the Hospital. The Adjustment Board shall meet within ten (10) days of receipt of the request for its establishment and shall consider fully all aspects of the issues presented. Any decision by a majority of the four members of the Board of Adjustment shall be final and binding upon all parties, subject to limitations on jurisdiction and authority contained in 33.4(c) below. If, during the period that the Adjustment Board can meet, no majority decision is reached, either party may request in writing that the matter be referred to Step Three, provided that if such request is made, it must be made within ten (10) days of a deadlock at the Adjustment Board, or within ten (10) days following the period during which the Adjustment Board can meet whichever occurs first, or proceeding to arbitration shall be waived.

33.4 **STEP THREE – ARBITRATION**

The following procedure shall apply if a grievance is timely submitted in writing to arbitration:

a. If the parties cannot reach agreement, the parties shall obtain a list of impartial arbitrators from the Federal Mediation and Conciliation Services (FMCS). The parties will select an arbitrator by alternately striking names from the list until one arbitrator remains. The selection of the arbitrator must be completed no later than thirty (30) calendar days from receipt by the Facility of the appeal to arbitration.

b. A hearing on the grievance shall be held at a time and place designated by the arbitrator, at which the Facility and the Union shall present their respective positions, evidence and arguments. The sole parties to the arbitration shall be the Facility and the Union. The arbitrator's decision shall be rendered in writing and shall be final and binding on the parties and on all affected bargaining unit employees. It shall be issued not more than thirty (30) calendar days after the close of the hearing or the filing of the briefs, whichever is later.

c. The arbitrator's authority is derived from this Agreement and his/her jurisdiction is limited to the interpretation and application thereof. He/She/They shall not have authority to:

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

     i. amend or modify any provision of this Agreement; or

    ii. render an award on any grievance arising before the effective date or after the termination date.

  d. The fee and expenses of the arbitrator, the court reporter's appearance fee, and the cost of mutual facilities shall be borne equally by the Facility and the Union.

**B.** **NUHW and BCH Oakland Have a Dispute Over the Application of and Interpretation of CBA Language Concerning Representation, Subcontracting, Meet and Confer, Successorship, and Other Language**

  **1.** **Facts Giving Rise to the Parties' Dispute Over the CBA Language**

  22. On or around January 24, 2025, the Defendant gave the initial notice that led to these disputes over the interpretation of various provisions of each of the CBAs, as they applied to each of the three bargaining units. On January 24, 2025, Defendant BCH Oakland notified Plaintiff NUHW that on July 1, 2025, "BCH Oakland employees will become public employees of UCSF with UCSF job titles." Defendant also then engaged in direct dealing with NUHW's employees, telling them, "On July 1, 2025, all BCH Oakland staff will transition their employment to the University of California (UC)." Defendant BCH Oakland named this forced separation of employment and outsourcing of its employees to UCSF, an alleged "transition." BCH Oakland later changed the July 1, 2025, date to July 6, 2025, purportedly to synchronize the date with its payroll processes. Attached as **<u>Exhibit D</u>** to this Complaint are true and correct copies of BCH Oakland's January 24, 2025, communications to NUHW, and to NUHW's members.

  23. Since January 24, 2025, Defendant has also maintained that when BCH Oakland employees are forced to become UCSF employees, then BCH Oakland will also be withdrawing recognition from NUHW as the certified representative of all the 1,332 employees it represents, and that BCH Oakland will cease to recognize and abide by the terms and conditions of all its CBAs with NUHW. On April 1 and April 2, 2025, BCH Oakland gave NUHW notice that it will stop adhering to the S&T CBA, the BOC CBA, and the Pros CBA, beginning July 6, 2025. On April 10, 2025, BCH Oakland issued a notice to the National Labor Relations Board (NLRB) that it would unilaterally "terminate" all three NUHW-represented bargaining units and all three CBAs with NUHW, effective July 5, 2025, at 11:59 p.m. In those notices, BCH Oakland

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

1  acknowledged that all three NUHW-represented bargaining units were private-sector employees

2  organized under and subject to the jurisdiction of the National Labor Relations Act (NLRA).

3  Attached as **Exhibit E** to this Complaint are true and correct copies of BCH Oakland's April 1

4  and April 2, 2025, Notices to NUHW "Pursuant to the National Labor Relations Act ("NLRA")",

5  as well as BCH Oakland's April 10, 2025 "Required 60-day Notice to Terminate Collective

6  Bargaining Units".

7
8         **2.**       **NUHW's Grievances Were Properly and Timely Submitted and Advanced to Arbitration**

9         24.     Since January 24, 2025, Plaintiff NUHW has objected to BCH Oakland's forcibly

10  severing the employment of all its 1,332 NUHW-represented employees and subcontracting of its

11  bargaining unit work and employees to UCSF.

12         25.     Plaintiff NUHW submitted six initial grievances on January 31, 2025 (two for

13  each bargaining unit), alleging violations of the CBA's recognition clause and alleging that

14  Defendant was subcontracting all its bargaining unit work to UCSF.  NUHW also sent BCH

15  Oakland a Request For Information seeking information related to the allegations of withdrawal

16  of representation and subcontracting.  On February 14, 2025, BCH Oakland provided an initial

17  written response to NUHW's information request.  On February 18, 2025, the parties met in-

18  person to discuss those initial grievances and the pending information request.

19         26.     On February 24, 2025, NUHW submitted three additional amended grievances,

20  one for each bargaining unit, that included the original allegations together with several

21  additional alleged violations of CBA provisions.

22         27.     On February 28, 2025, BCH Oakland denied all the grievances.  On March 4,

23  2025, the parties met for the Step 2 Adjustment Board, and despite efforts, the Adjustment Board

24  was unable to resolve the grievances.  On March 6, NUHW provided notice that it was moving

25  the grievances to arbitration.  On March 21, 2025, NUHW requested arbitration of the

26  grievances.

27         **3.**       **The Grievances Allege Violations of the CBAs**

28         28.     Each of these three operative grievances allege violations of specified key



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

provisions in each of the CBAs, including without limitation the CBA's language about: recognition/bargaining unit, meet and confer, no subcontracting, shop stewards, and discharge for cause. Also, at issue and noted in the grievances is the language on successorship, which as explained below, is directly at issue because Defendant has repeatedly asserted that this successorship language privileges it to engage in the disputed conduct. All these topics and more are stated in the attached grievances, and some of this CBA language is discussed below. For each operative grievance, the introductory Statement of Grievance alleged:

> As an overview, the Hospital is attempting to withdraw recognition from NUHW and subcontract all bargaining unit work to UCSF, in gross violation of the explicit promises the Hospital made during bargaining, to its workers that this would not and could not occur unilaterally under the language agreed to in the labor contract. The Hospital is attempting to evade the bargaining unit recognition language, as well as the entire contract. Specific provisions are cited below. These violations are continuing….

29.     For each operative grievance, the Union specifically noted the parties' dispute over the interpretation of Section 1.5, Notice of Successorship, as follows: "Section 1.5, Notice of Successorship. The Hospital appears to be invoking this Section improperly."

30.     Attached as **Exhibit F** to this Complaint are the operative amended grievances, namely the three February 24, 2025, grievances submitted, one for each of the three bargaining units.

***Recognition/Bargaining Unit***

31.     Each grievance alleged violations of the CBAs' Sections on Recognition/ Bargaining Unit. Each of the three CBAs provide, in relevant part language that BCH Oakland will recognize NUHW as the exclusive bargaining agent for employees in specified NLRB certified units. The S&T CBA includes the following language (*See* **Exhibit A**, S&T CBA, Section 1.1):

> 1.1     BARGAINING UNIT
>
> a.  The Hospital recognizes the Union as the exclusive bargaining agent for employees in the bargaining unit certified in Case 32-RC-114542 and NLRB Case 32-RC-175744. Classifications covered by this Agreement are listed in Appendix A.



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

b. Newly Established Classifications

This Agreement shall apply to other classifications that may be established within the scope of the duties now and historically included within the listed classifications and the wage rates of these other classifications will be determined by mutual agreement between the parties.

32.     Likewise, the BOC CBA includes the following language (*See* **Exhibit B**, BOC CBA, Section 1.1):

1.1     BARGAINING UNIT

The Hospital recognizes the Union as the exclusive bargaining agent for employees in the bargaining unit certified in Case 32-RC-170709. Classifications covered by this Agreement are listed in Appendix A.

a. Newly Established Classifications

This Agreement shall apply to other classifications that may be established within the scope of the duties now and historically included within the listed classifications and the wage rates of these other classifications will be determined by mutual agreement between the parties.

b. Exclusions

Excluded from the bargaining unit are service, maintenance, and technical employees, stationary engineers, registered nurses and professional employees, guards, supervisors, and such other classifications as may have been historically excluded from the unit.

33.     Finally, the Pros CBA includes the following language (*See* **Exhibit C**, Pros CBA, Section 1.1):

1.1     BARGAINING UNIT

a. The Hospital recognizes the Union as the exclusive bargaining agent for employees in the bargaining unit certified in Case 32-RC-190377. Classifications covered by this Agreement are listed in Appendix A.

b. Newly Established Classifications

This Agreement shall apply to other classifications that may be established within the scope of the duties now and historically included within the listed classifications and the wage rates of these other classifications will be determined by mutual agreement between the parties.



**SIEGEL**
**LEWITTER**
**MALKANI**
ATTORNEYS AT LAW
*1939 Harrison Street*
*Suite 307*
*Oakland, CA 94612*
*T: (510) 452-5000*
*F: (510) 452-5004*

14

NUHW'S COMPLAINT TO COMPEL ARBITRATION

c.  Exclusions

Excluded from the bargaining unit are office and clerical employees, stationary engineers, guards, supervisors, and such other classifications as may have been historically excluded from the unit.

34.  Each grievance alleged that BCH Oakland on February 18, 2025, confirmed that it will be withdrawing recognition from NUHW as the exclusive bargaining representative for recognized employees, and confirmed that it will be replacing existing classifications with newly created classifications with new wage rates without mutual agreement of the parties.

***No Subcontracting***

35.  Each grievance alleged violations of the CBAs' Sections on No Subcontracting. The S&T CBA includes the following language: "Notwithstanding the provisions of Section 1, Recognition, Subsection 1.3, during the life of this Agreement, the Hospital will not subcontract any bargaining unit work currently performed within the Hospital without express consent of the Union…." *See* **Exhibit A**, S&T CBA, Section 1.7(a) (No Subcontracting).  The BOC CBA similarly states: "Notwithstanding the provisions of Subsection 1.3, Notice of Mergers or Closures, during the life of this Agreement, the Hospital will not subcontract any bargaining unit work currently performed within the Hospital without express consent of the Union." *See* **Exhibit B**, BOC CBA, Section 1.7 (No Subcontracting).  The Pros CBA states, "The Hospital will not subcontract any bargaining unit work currently performed by the classifications listed in Appendix A." *See* **Exhibit C**, Pros CBA, Section 1.7 (No Subcontracting).  All three grievances alleged that BCH Oakland had taken steps, and continues to act, to unilaterally subcontract all bargaining unit work performed within the Hospital by NUHW-represented employees, to UCSF. *See* **Exhibit F**.

***Meet and Confer***

36.  Each grievance also alleged violations of the CBAs' Sections on Meet and Confer. Each of the three CBAs provide, in relevant part: "The Hospital shall not use any sale, transfer, or other mechanism for the sole purposes of evading the terms of this agreement." *See* **Exhibit A**, S&T CBA, Section 1.6 (Meet and Confer); **Exhibit B**, BOC CBA, Section 1.6 (Meet and

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

15
NUHW'S COMPLAINT TO COMPEL ARBITRATION

Confer); **Exhibit C**, Pros CBA, Section 1.6 (Meet and Confer).  Each of the grievances allege that BCH Oakland is using subcontracting and/or other mechanisms for the sole purpose of evading the terms of the CBAs.  *See* **Exhibit F**.

***Notice of Successorship Provisions***

37.    Each grievance also alleged that BCH Oakland was improperly invoking the CBAs' Sections on Notice of Successorship.  As noted below, the interpretation of this language contained in Section 1.5(b) of the CBAs is particularly in dispute because Defendant asserts that this contract language privileges BCH Oakland to compel BCH Oakland employees to either become UCSF employees or lose their jobs.

**C.    Defendant BCH Oakland Has Refused and Failed to Arbitrate the Grievances**

38.    After the grievance was submitted, representatives of NUHW have consistently sought to resolve the dispute or, absent resolution, advance the dispute to arbitration.  The parties have been unable to resolve the dispute, but Defendant has refused Plaintiff's oral and written demands for arbitration.

39.    As noted above, after moving the grievances to arbitration, on March 21, 2025, NUHW requested that BCH Oakland either cease and desist from additional conduct to implement its forced separation and subcontracting of employees or agree to arbitration.  NUHW alleges that the proposed integration date of early July 2025, is a deadline of Defendant's own making, and one that Defendant could easily postpone until an arbitration is concluded.  Since Defendant had itself set a deadline of July 6, 2025, NUHW offered to participate in expedited arbitration.  NUHW's rationale in offering expedited arbitration was to allow, if Defendant so agreed in March of 2025, an arbitration to occur and be completed, or close to completion, in advance of Defendant's unilaterally imposed deadline.  Over the following week, the parties exchanged several emails.  On March 26, 2025, Defendant refused expedited arbitration, stating through its counsel: "To respond to your question as to whether the Hospital agrees to an expedited arbitration process, the response is that the Hospital will not agree to this request."

40.    The parties, by and through their counsel, scheduled a call for March 28, 2025.

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

During the call, when NUHW's representative requested arbitrator selection under the procedures stated in the CBAs, BCH Oakland's representative responded by saying that it would not participate in arbitrator selection with NUHW because it was declining to participate in arbitration. BCH Oakland said it would be sending over a letter response to NUHW's request for arbitration, explaining its rationale.

41.     On March 28, 2025, Defendant responded to NUHW's Request for Arbitration and declined to proceed to arbitration on all of the grievances. The letter is very firm and clear that BCH Oakland will not agree to arbitration under any circumstances, stating: "Accordingly, the Hospital is declining to proceed to arbitration on the NUHW grievances." *See* **Exhibit G**, Response to Demand for Expedited Arbitration, dated March 28, 2025, at p. 8.

42.     As two of the CBAs (the S&T and BOC CBAs) were set to expire, NUHW requested bargaining over successor CBAs. The parties met for successor contract negotiations on several occasions, including March 19, April 16, April 24, and April 30, 2025. BCH Oakland would not negotiate an agreement that extended beyond July 5, 2025. During these sessions, NUHW made oral demands to arbitrate these disputes, and BCH Oakland repeatedly refused to do so. On April 30, 2025, BCH Oakland sent NUHW another written communication citing Section 1.5 of the CBAs and claiming that NUHW's demand for arbitration was improper. On May 1, 2025, BCH Oakland issued offer letters directly to NUHW-represented employees (again, direct dealing), giving them the ultimatum of losing their job or signing up with UCSF with largely, inferior compensation packages. On May 9, 2025, NUHW again asked BCH Oakland whether it would agree to arbitration. On May 13, 2025, BCH Oakland responded in substance, stating that its position has not changed and reiterating its refusal to arbitrate the grievances.

**D.     BCH Oakland's Refusal to Arbitrate Is Based on Its Disputed Interpretation of Section 1.5, and on Other Merits-Based Arguments**

43.     There can be no question that an arbitrator would be called upon to interpret and apply various provisions of the CBAs, including Section 1.5 of the parties' CBA. As noted, NUHW's grievances (**Exhibit F**) cite to Section 1.5 and allege "The Hospital appears to be invoking this Section improperly." Moreover, in declining to proceed to arbitration, BCH

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

17
NUHW'S COMPLAINT TO COMPEL ARBITRATION

1   Oakland expressly relied on its interpretation of CBA language contained in Section 1.5(b): "In

2   contrast to the contract provisions listed in the six grievances, contract Section 1.5(b) is relevant

3   and dispositive of the Request for Expedited Arbitration. This provision was discussed and

4   agreed to by NUHW when the current contract was negotiated." *See* **Exhibit G** at p. 2.

5         44.   A key dispute between the parties is whether BCH Oakland's forcibly making its

6   employees become UCSF employees, violates the no subcontracting and meet and confer

7   language (Sections 1.6 and 1.7), or is an occurrence anticipated by the successorship provisions

8   (Section 1.5) of the CBA. To this end, BCH Oakland has repeatedly and unequivocally claimed

9   that it is not subcontracting because, allegedly, the Hospital is relying on Section 1.5. BCH's

10   Oakland's March 28, 2025, written declination and refusal to arbitrate cites the CBA provisions

11   Section 1.5, Notice of Successorship in its entirety. *See* **Exhibit G** at pp. 2-5. In the letter, BCH

12   Oakland's stated reason for declining arbitration relies on BCH Oakland's interpretation of

13   Section 1.5, which not surprisingly differs from NUHW's interpretation of Section 1.5. In its

14   letter refusing to arbitrate, BCH Oakland acknowledges the parties' dispute over the meaning of

15   this language: "Contrary to NUHWs assertions, contract provision 1.5(b)(2) expressly anticipated

16   and provided for the possibility of future changes in health care grants and efficiency of service

17   delivery, with resulting operational integration of BCH Oakland with UCSF." *See* **Exhibit G** at

18   p. 6.

19         45.   NUHW asserts that Section 1.5(b) does not privilege BCH Oakland to proceed

20   with its integration. ***NUHW asserts, and will demonstrate through bargaining history at***

21   ***arbitration, that when it negotiated and agreed upon the language in Section 1.5(b), the parties***

22   ***explicitly discussed during bargaining and understood that BCH Oakland would not and could***

23   ***not force BCH Oakland employees to become UCSF or UC employees under the***

24   ***circumstances that exist here, while at the same time BCH Oakland continues to exist as a***

25   ***separate legal entity from UCSF.*** Yet BCH Oakland is doing now exactly what it promised

26   during bargaining it would not do, while continuing to exist as a separate legal entity: with a

27   separate hospital license from UCSF, with no change to the hospital name or branding, with

28   separate government contracts from UCSF, with separate managed care contracts from UCSF,

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

1  with no change to FQHC status, and with virtually no changes other than those related to

2  employee status, compensation, benefits, or human resources.  As BCH Oakland admitted:

3  "There is no change to BCH Oakland's status as a private, nonprofit children's hospital that is

4  separately licensed from UCSF Medical Center."  See **Exhibit H**, February 14, 2025, BCH

5  Oakland's  response to NUHW's information request, at p. 3.

6        46.    NUHW's understanding is consistent with the Affiliation Agreement and the

7  Amended and Restated Management Services Agreement (MSA) between BCH Oakland and the

8  Regents of the University of California, acting on behalf of the University of California San

9  Francisco (UCSF).  Since August 1, 2013, those agreements have been clear that rank-and-file

10 employees remain employed by BCH Oakland, with only a defined group of Senior Executives

11 being employees of UCSF.   The MSA itself in Section 2.1(c) openly admits this: "All employees

12 of CHO and/or the Hospital, other than the Senior Executive Employees and such other

13 individuals who may be employed or contracted by Manager to perform the Management

14 Services, shall remain employees of CHO."

15       47.    Also, as to NUHW's alleged violations of the no subcontracting section, BCH

16 Oakland's response asserts that no violation has occurred, by claiming that their alleged

17 "integration" is not subcontracting based on a third-party definition of the word "subcontracting".

18 This is clearly a dispute on the merits of the grievance that turns on the interpretation of contract

19 language – again, a matter to be determined by an arbitrator.

20       48.    Finally, in response to NUHW's allegation that BCH Oakland has violated Section

21 1.6, BCH Oakland again frames the dispute as one that will turn on the merits.  Through

22 information requests, NUHW confirmed that BCH Oakland and its satellite clinics would retain

23 the same ownership structure, funding sources and license.  The only items that change because

24 of the integration are that the BCH employees are forced to either lose their jobs or become

25 UCSF employees, and that the contracts and compensation of these employees will be through

26 UCSF. *See* **Exhibit H**. NUHW thus alleges that the proposed "integration" is for the sole

27 purpose of evading the collective bargaining agreement, as by subcontracting the employees to

28 UCSF, BCH Oakland would rid itself of its collective bargaining obligations under the CBA's

SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

terms.  NUHW's employees have determined that on average, they will lose approximately

$10,000 in take home pay because UCSF would move the NUHW-represented employees into

unions whose contracts would require the employees to pay significantly more for their health

and retirement benefits.  Thus, the parties clearly dispute whether the proposed "integration" is

being done for the sole purpose of evading the CBAs.  Again, this is a merits dispute.

49.    Ironically, BCH Oakland's March 28, 2025, refusal to arbitrate illustrates

precisely why the parties dispute the language of several provisions in the CBAs, and why an

arbitration is the appropriate and contractually agreed-upon method for resolving the parties'

disputes over the meaning and application of the CBA's language.

## V. CLAIM FOR ORDER COMPELLING ARBITRATION
## UNDER 9 U.S.C. § 4 AND 29 U.S.C. § 185

50.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

51.    Plaintiff is a labor organization representing employees in industries affecting

interstate commerce.

52.    Defendant BCH Oakland is engaged in industries affecting commerce.

53.    Both Plaintiff and Defendant are parties to each of the three CBAs; each having

voluntarily agreed to the terms of each CBA, including the Grievance and Arbitration procedures.

54.    Disputes under the CBAs have arisen between the parties.

55.    The disputes fall within the scope of the Arbitration provisions of the CBAs,

which subjects the disputes to arbitration.

56.    Plaintiff timely advanced the disputes as Grievances through all applicable

contract provisions called for in the CBAs, up to and including demanding arbitration of the

disputes.

57.    Despite the disputes being ripe for arbitration, Defendant has failed, neglected, or

refused to arbitrate the disputes, or any one of the disputes, under each of the three CBAs.

58.    The Petition is properly brought under Section 301 of the Labor Management

Relations Act, 29 U.S.C. § 185.  "As a general rule in cases to which federal law applies, federal

labor policy requires ... use of the contract grievance procedure agreed upon by employer and


SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004

1  union as the mode of redress." *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614,

2  13 L.Ed.2d 580 (1965).  The intent of Congress in passing Section 301 was to encourage

3  mutually agreed upon grievance procedures between parties to "promote a higher degree of

4  responsibility upon the parties to such agreements ... thereby promot[ing] industrial peace."

5  *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l, AFL–CIO,* 370

6  U.S. 254, 263, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962) (quoting S.Rep. No. 105, 80th Cong., 1st

7  Sess. 17).  "That policy can be effectuated only if the means chosen by the parties for settlement

8  of their differences under a collective bargaining agreement is given full play." *Id.* (citing *United*

9  *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 566, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960)).

10  This goal is embodied in Sections 31 of the S&T CBA and the BOC CBA, and Section 33 of the

11  Pros CBA, which states that the arbitrations procedures "shall apply".

### VI. RELIEF SOUGHT/PRAYER FOR RELIEF

13      WHEREFORE, Plaintiff prays as follows:

14  1.      For an order compelling Defendant BCH Oakland to arbitrate the grievances in

15      accordance with the CBAs, and a judgment thereon;

16  2.      For an award of reasonable attorney fees;

17  3.      For costs incurred herein; and

18  4.      For such other and further relief as this Court deems just and proper.

20  DATED:  May 13, 2025         SIEGEL LEWITTER MALKANI

21          By:       /s/ Latika Malkani

22          Jonathan H. Siegel

23          Latika Malkani

        Laura Herron Weber

24          *Attorneys for Plaintiff National Union of*

        *Healthcare Workers*



SIEGEL
LEWITTER
MALKANI
ATTORNEYS AT LAW
1939 Harrison Street
Suite 307
Oakland, CA 94612
T: (510) 452-5000
F: (510) 452-5004