UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION OF HEALTHCARE WORKERS,<br><br>Plaintiff,<br><br>v.<br><br>CHILDREN'S HOSPITAL & RESEARCH CENTER AT OAKLAND,<br><br>Defendant. | Case No. 25-cv-04128-RS<br><br>**ORDER DENYING MOTION FOR INJUNCTIVE RELIEF** |

I. INTRODUCTION

Defendant Children's Hospital & Research Center at Oakland ("the Hospital") owns and operates a hospital in Oakland, CA, that specializes in pediatric care. In 2013, the Hospital and University of California San Francisco ("UCSF") entered into an "Affiliation Agreement" for the stated purpose of developing "an integrated healthcare delivery system under the UCSF name to improve the quality of healthcare in Northern California." Since that time, the Hospital has been known as "UCSF Benioff Children's Hospital Oakland."

Beginning in the year prior to the formation of the Affiliation Agreement, plaintiff National Union of Healthcare Workers ("the Union") represented one bargaining unit of Hospital employees—the Service and Technical ("S&T") unit. In the years that followed, the Union came to represent two additional units, the Business Office Clerical ("BOC") unit and the Professionals ("Pros") unit. Other Hospital employees are represented by other unions.

On January 24, 2025, the Hospital provided written notification to the Union that Hospital

1  employees would "transition" to employment with UCSF effective July 1, 2025. That date was
2  later extended to July 6, 2025, to accommodate the payroll processing schedule. The Union now
3  seeks an injunction against the Hospital proceeding with "transitioning" Union members to UCSF
4  employment, pending arbitration of the question of whether the Hospital has the right to do so
5  under the relevant collective bargaining agreements.[1] For the reasons explained below, the request
6  for injunctive relief will be denied.

## II.  BACKGROUND

The Hospital employs approximately 2800 workers. As noted, the Union represents three separate bargaining units. There are approximately 671 employees in the S&T unit, approximately 336 in the BOC unit, and approximately 325 in the Pros unit. Thus, the Union represents slightly less than half of the Hospital's employees.

Each bargaining unit has been governed by a separate collective bargaining agreement ("CBA"). The provisions of the three CBAs are identical or substantially similar in most relevant respects. The S&T and BOC CBAs, however, both expired on April 30, 2025. The Pros CBA, in contrast, does not expire until August 31, 2025.

Under Section 1.1 of each CBA, entitled "Recognition: Bargaining Unit," the Hospital expressly recognizes the Union as the exclusive bargaining agent for the employees in that unit. The Union's central contention is that by going forward with the "transition" of Hospital employees to employment with UCSF, the Hospital is "attempting to withdraw recognition from [the Union] and subcontract all bargaining unit work to UCSF, in gross violation of the explicit promises the Hospital made during bargaining."

---

[1] The Union characterizes the relief it sought as either an "ex parte" temporary restraining order or a preliminary injunction. Because the Hospital has had notice and sufficient opportunity for briefing, the motion is appropriately deemed one for a preliminary injunction. Unlike a typical preliminary injunction that would remain in effect during pendency of the litigation, however, here the Hospital would be enjoined from proceeding with the transition of the employees pending a decision by an arbitrator.

CASE NO. 25-cv-04128-RS
2

In addition to the "Recognition" provision in Section 1.1 of each CBA, the Union relies on the "No subcontracting" language in Section 1.7 of each agreement. In the S&T and BOC CBAs, that provision states, "during the life of this Agreement, the Hospital will not subcontract any bargaining unit work currently performed within the Hospital without express consent of the Union." In the Pros CBA, the language is, "The Hospital will not subcontract any bargaining unit work currently performed by the classifications listed in Appendix A."

The Union also contends transitioning the employees violates Section 1.6 (Meet and Confer) of each CBA, which provides, "The Hospital shall not use any sale, transfer, or other mechanism for the sole purposes of evading the terms of this agreement." The Union insists that the question of whether the Hospital violated these or any other CBA provisions must be resolved through arbitration. Section 31 of the S&T and BOC CBAs, and Section 33 of the Pros CBA, set out detailed multi-step processes for submitting grievances and arbitrating disputes.

The Union believed the Hospital initially was willing to engage in the grievance procedure. The Hospital ultimately took the position that while it would bargain over details of how the transition would be carried out—so-called "effects" bargaining—it would not bargain about or arbitrate whether the transition was going take place.[2] The Hospital contends Section 1.5 of each of the CBAs applies to, and expressly authorizes, the transition. With emphasis added as to the language particularly pertinent here, that section states:

1.5 NOTICE OF SUCCESSORSHIP

. . .

b. For University of California and Other Public Successors

Notwithstanding the provisions of Subsection 1.3 (Notice of Mergers or Closures) of this Agreement, <u>in the event of</u> a merger, sale, or <u>any transfer of</u> ownership or <u>operation of the Hospital, in whole or in part</u>, or one or more of its facilities where represented employees work, in

---

[2] Similarly, as to the expiring S&T and BOC CBAs, the Hospital was unwilling to negotiate new agreements with expiration dates any later than July 6, 2025.

whole or in part, <u>to</u> or with any entity that is either (1) The University of California, (2) <u>The University of California, San Francisco</u>, (3) an entity that has as its sole member the Regents of the University of California, (4) or a public entity that is subject to the Meyers Milias Brown Act, <u>the Hospital shall comply with the following</u>:

i. Notification: The Hospital shall notify the Union in writing at least five (5) months prior to taking any action described in the preceding paragraph.

ii. Effects: The Hospital and the Union shall bargain in good faith over the effects of such action. The parties shall commence bargaining over the effects no later than seven (7) working days from the date of the written notice.

iii. Job Security. The Hospital shall provide each affected employee the option to either separate employment or pursue employment with the successor employer. Regular full-time and regular part-time employees who choose to separate employment shall receive the severance pay detailed below:

[Table omitted]

For those who choose to pursue employment with the successor employer, the Hospital will make every reasonable effort to get the successor to hire each employee into a comparable position with comparable compensation. Additionally, the Hospital will make every reasonable effort to get the public employer successor to recognize the employees UCSF Benioff Children's Hospital Oakland years of service. The Hospital will provide severance pay for regular full-time and regular part-time employees who pursue employment but are not offered a position at the successor employer, as follows:

[Table omitted]

The Hospital will also provide the following COBRA payment for regular full-time and regular part-time employees who pursue employment with the successor and are not offered a comparable position with comparable compensation at the successor employer, as follows: A lump sum payment equal to the amount of COBRA premium to continue their current benefit elections per the following schedule:

(1) Medical, Dental, and Vision coverage for two (2) months following the month of separation.

(2) Employee Assistance Program for two (2) months following the month of separation.

Accordingly, Section 1.5 expressly contemplates that the Hospital could "transfer . . . operation of the Hospital, in whole or in part, . . to . . .The University of California, San Francisco," as long as it (i) provides the specified notice, (ii) engages in good faith "effects bargaining," and (iii) undertakes the described steps to protect employee job security,

1   compensation, and benefits.

2   The Hospital reports 47 employees elected voluntary severance in lieu of becoming UCSF
3   employees and that all others will be employed by UCSF without loss of pay and with
4   substantially similar benefits as they had at the Hospital, including credit for time as employees
5   there. The Union makes some general assertions about potentially inferior working conditions and
6   benefits, but has not argued the Hospital has failed to comply with its obligations set out in (i)-(iii)
7   of Section 1.5.

## III.  LEGAL STANDARDS

The Norris-LaGuardia Act, 29 U.S.C. §§ 101-115 generally deprives federal courts of jurisdiction to issue "any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute." 29 U.S.C. § 101. In 1970, however, the Supreme recognized an exception that allows a federal court to enjoin a union from striking "where the union and employer are bound by a collective bargaining agreement and that agreement provides for binding arbitration of the dispute giving rise to the planned strike." *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 253 (1970). *See also, Buffalo Forge Company v. United Steelworkers of America*, AFL-CIO, 428 U.S. 397, 406-07 (1976).

Here, the Union seeks what is often called a "reverse *Boys Markets* injunction." Rather than enjoining employees from striking where a CBA requires arbitration of the dispute, a reverse *Boys Markets* injunction prevents the employer from taking some threatened action affecting the conditions of employment, pending arbitration of the issues. The parties agree that the basic requirements for a reverse *Boys Markets* injunction are the same as those identified in *Boys Market.* Injunctive relief is available when: (1) the collective bargaining agreement contains a mandatory arbitration provision; (2) the underlying dispute is arbitrable; (3) the party seeking arbitration is prepared to arbitrate; and (4) issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether the breaches have caused or will cause irreparable

injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. *Newspaper & Periodical Drivers' & Helpers' Union, Loc. 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 632 (9th Cir. 1996).

The Hospital argues there is an additional threshold requirement for reverse *Boys Markets* injunctions, namely that there be an express or implied in fact promise by the employer to preserve the status quo with respect to the disputed CBA provisions, pending arbitration. *Amalgamated Transit Union, Div. 1384 v. Greyhound Lines, Inc.*, 550 F.2d 1237, 1239 (9th Cir. 1977). While other circuits have criticized *Amalgamated* for imposing such a requirement, *see e.g., Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 931 (1st Cir. 1988), it remains good law in this circuit.

That said, such a requirement would not appear to foreclose the injunction the Union seeks here. As *Amalgamated* explained, there generally is no basis to find an implied promise to maintain the status quo where the employer's proposed changes will not "frustrate and interfere with the arbitral process." 550 F.2d at 1238. If the employer's position is rejected in arbitration, ordinarily "the situation can be restored substantially to the status quo ante." *Id.* By negative implication, *Amalgamated* thereby suggests that an implied promise to maintain the status quo may properly be found where, as here, the employer's proposed action would be virtually impossible to unwind even if the union were to prevail at arbitration. As will ultimately appear, the Union has not shown a basis to enjoin the Hospital from proceeding with its plans, but that conclusion does not turn on a failure to satisfy any threshold requirement of *Amalgamated*.[3]

---

[3] The Hospital also contends the relief sought by the Union would violate a provision of the Norris-LaGuardia Act that prohibits injunctions against "ceasing or refusing to perform any work" or that require anyone "to remain in any relations of employment." 29 U.S.C. § 104. It is unclear whether or how that provision would apply to these facts, and this decision does not rest on it.

## IV. DISCUSSION

A. California Public Employment Relations Board Proceedings

The Hospital is a private entity subject to the National Labor Relations Act ("NLRA"). The NRLA does not cover States or political subdivisions of States, however. 29 U.S.C. § 152(2). Once the transition to UCSF employment takes place, the workers will be subject to state law governing unionization, such as the Higher Education Employer-Employee Relations Act, Cal. Gov. Code, § 3560 *et. seq.*; see also Cal. Gov. Code, § 3512 [Dill's Act covers state employees]; § 3550 [Meyers-Milias-Brown Act covers city and county employees]. The California Public Employment Relations Board ("PERB") is the expert quasi-judicial agency charged with administering and enforcing California's public sector collective bargaining statutes. Cal. Gov. Code, § 3541.

Presently pending before the PERB is a proceeding brought by the California Nurses Association ("CNA") asserting the Hospital is *currently* a public employer subject to the jurisdiction of the PERB. Although the Hospital is vigorously disputing the CNA's claim before the PERB, it argues that a decision in favor of the CNA would mean the Hospital and its employees are not subject to federal labor law. The Hospital suggests principles of comity and abstention therefore support the court declining jurisdiction in this matter, under *Younger v. Harris,* 401 U.S. 37 (1971), *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and/or *Burford v. Sun Oil Co*., 319 U.S. 315, 327 (1943).

It is unclear whether a decision by the PERB in favor of the CNA would have any binding effect on the Union. Conversely, if the Hospital prevails before the PERB, that will resolve none of the issues raised by the Union in this action. The Hospital ultimately acknowledges that *Younger*, *Colorado River*, and *Burford* abstention doctrines "may not fit perfectly to this situation." The Hospital has failed to show abstention is appropriate.

B. Claims by S&T and BOC units

It is undisputed that the S&T and BOC CBAs both expired on April 30, 2025. The Union

attempts to dance around this fact by arguing that the Hospital gave notice of the intended transition and began taking steps to implement it while the CBAs were still in effect. No provision of the CBAs or principle of law or logic make it wrongful for the Hospital to begin preparing for events that will take place after the CBAs expire. The Union insists that because an injunction may sometimes properly issue against "threatened" action, it is enough that the CBAs were in effect when the Hospital stated its intent—*i.e.* "threatened"—to carry out the transition. That misses the critical point that there was no threat to effect the transition during the term of those CBAs.

Because neither CBA will be in effect on July 6, 2025, the transition to UCSF employment cannot be a breach of either CBA, and there is nothing for the S&T and BOC units to arbitrate with respect to the propriety of that transition going forward. The expiration of those CBAs, however, in no way impedes the Union's right to advance arguments under the CBA governing the Pros unit.[4]

C. The Pros unit

As noted, the CBA applicable to the Pros unit does not expire until the end of August. In deciding whether a grievance is arbitrable, the court is only deciding the issue of arbitrability under the collective bargaining agreement and not the merits of the grievance. *United Steelworkers v. American Mfg. Co*., 363 U.S. 564, 569 (1960). Nevertheless, the Ninth Circuit has made clear that a plaintiff is not entitled to an injunction pending arbitration simply because it *argues* there is an arbitrable dispute. Rather a plaintiff seeking to maintain the status quo pending arbitration pursuant to the principles of *Boys Markets* must establish that "the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor." *Amalgamated Transit Union, Div. 1384 v. Greyhound Lines, Inc*., 529 F.2d 1073, 1077–78 (9th Cir.), vacated on other grounds *sub nom. Greyhound Lines, Inc. v. Amalgamated Transit Union,*

---

[4] Arguably the smaller number of Union members with potential claims could effect the balance of the equities. This order, however, does not turn on that distinction.

*Div. 1384, AFL-CIO*, 429 U.S. 807 (1976).[5]

While that bar is not high, and is lower than the required showing of "probability of success on the merits" applicable to injunctions outside the labor context, the Union has failed to clear it here. As set out above, Section 1.5 of the CBA expressly allows the Hospital to "transfer . . . operation of the Hospital, in whole or in part, . . to . . .The University of California, San Francisco," as long as it (i) provides the specified notice, (ii) engages in good faith "effects bargaining," and (iii) undertakes the described steps to protect employee job security, compensation, and benefits. As noted, the Union makes no claim the Hospital failed to meet conditions (i)-(iii).

Instead, the Union repeatedly insists that when the language of Section 1.5 was negotiated "at the bargaining table" the Hospital agreed the provision "would not grant the Hospital the unilateral right to force [Hospital] employees to become UCSF employees under circumstances such as exist here." As evidence of the Hospital's supposed agreement to that effect, the Union cites the declaration of Abid Yahya, one of its negotiators, who only makes the same conclusory assertion.

It is not entirely clear what the Union means by "under circumstances such as exist here" or whether it concedes the Hospital would have the right to transition employees to UCSF under some other (unspecified) circumstance. It appears the Union may believe the problem is that the Hospital will continue to exist as a separate legal entity, which theoretically could continue to employ the workers itself. The Union has not explained, however, why the Hospital's rights under Section 1.5 should be contingent on it ceasing to exist as a separate legal entity. Indeed, the plain language is to the contrary—e.g. "any transfer of ownership or operation of the Hospital, in whole or in part."

If the Union truly believed the Hospital was agreeing to additional limitations on the

---

[5] This was the Ninth Circuit's original decision in the case. The *Amalgamated* decision discussed above followed remand by the Supreme Court. Neither the Supreme Court remand nor the subsequent opinion call into question the quoted principle.

circumstances in which Section 1.5 could apply, it was incumbent on the Union to ensure such limitations were reflected in the language of the provision. The Hospital is entitled under the plain language of Section 1.5 to carry out the July 6, 2025, transition, and the Union has not presented sufficient evidence or argument to create an arguable issue that some other interpretation could be adopted. Without more, there is simply no basis to enjoin the transaction to permit the Union to present its arguments to an arbitrator, even assuming a motion to compel arbitration could otherwise be properly granted.[6]

Finally, because the Hospital acted within its rights under Section 1.5, the Union's contentions that it breached the "Recognition" provision in Section 1.1, the "No subcontracting" language in Section 1.7, and/or Section 1.6 (prohibiting the use of "any sale, transfer, or other mechanism for the sole purposes of evading the terms of this agreement") fail.[7] Those sections do not supersede the Hospital's rights under Section 1.5. The Union has not argued to the contrary. While it insists Section 1.5 should be interpreted to be inapplicable in these circumstances, it effectively concedes that if Section 1.5 does permit the transition, there would be no breach of those other sections.

---

[6] The Union filed a noticed motion to compel arbitration, presently set for July 17, 2025. The impact of this order, if any, on that motion is not presently before the court.

[7] Whether transitioning workers to UCSF employment could be seen as "subcontracting" is doubtful in any event. If Section 1.5 did not authorize the transition, however, that likely would be a question for the arbitration.

## V. CONCLUSION

The Union's request for injunctive relief is denied.

**IT IS SO ORDERED**.

Dated: June 27, 2025

_____
RICHARD SEEBORG
Chief United States District Judge